MILLER, Respondent, vs. TOWN OF CASCO, Appellant.

*January 14—February 3, 1903.*

*New trial: Discretion: Defective highways: Personal injuries: Negligence: Special verdict: Inconsistent answers.*

1. An order granting a new trial, based solely on the legal conclusion that a special verdict is inconsistent and evasive, is not an order made in the exercise of the court's discretion.

2. In an action for personal injuries claimed to have been occasioned by a defective highway, plaintiff alleged that there was a hole in a bridge in the highway; that defendant's overseer of highways had placed sticks therein to warn travelers, and that her horse became frightened at the sticks, causing plaintiff to be thrown from her buggy and injured. A special verdict was rendered, in effect, that the highway was not defective; that the horse was ordinarily gentle; that it was, however, frightened by the sticks, and that the driver was not guilty of any contributory negligence. *Held*, that such verdict was not inconsistent or evasive, but was consistent with a finding that the injury was the result of pure accident, without negligence.

3. In such case, the jury having found that the highway in question was not defective, an affirmative answer to a question whether the town officers should have known of the existence of the hole, and repaired it, so as to make the road safe, before plaintiff's injury, "if it was not then repaired so as to be safe," does not render the verdict inconsistent, since the jury simply found that, upon the supposition that the highway was not safe when plaintiff was injured, then it should have been repaired.

4. Where a jury upon sufficient testimony have found that an occurrence was a pure accident, without negligence on either side, the defendant is entitled to judgment.

APPEAL from an order of the circuit court for Kewaunee county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

This is an action to recover damages for injuries suffered by the plaintiff by reason of being thrown from her buggy while riding upon a highway in the defendant town on the last day of September, 1900. The plaintiff's claim is that the highway was defective by reason of a hole at one end of a small bridge or culvert in the road in which the overseer of highways had placed certain sticks or pieces of wood to warn travelers of the defect, and at which sticks the plaintiff's horse became frightened, and swerved to the other side of the road, throwing her out of the buggy, and injuring her. The horse was driven by the plaintiff's son, a boy seventeen years of age. The jury returned the following special verdict:

"First question: On the 1st day of September, 1900, while the plaintiff, *Veronika Miller,* was riding in a buggy over the

public highway in the town of *Casco,* in said county, at the place particularly described in the complaint, did the left hind wheel of the buggy run off from the west end of the bridge, and cause plaintiff to be violently thrown from the buggy to the ground, and to be thereby injured? Answer. Yes. Second question: At the junction of said bridge with the approach thereto, was there a hole within the roadbed in that approach, and extending into the traveled track on the east side thereof at the time of the plaintiff's injury? Answered by the court, by consent of counsel, Yes. Third question: On the day when plaintiff sustained her injury, and before it occurred, did Anton Ouradnik, the overseer of highways in the road district which there included the place where plaintiff was injured, put a number of sticks or pieces of wood into said holes for the purpose of temporary repairs? Answer by the court, by consent of counsel, Yes. Fourth question: By reason of said hole, and with the sticks so placed therein by the overseer, was the highway at that point so insufficient in repair, when plaintiff was injured, that the natural and probable consequence of its appearance and condition would be to frighten horses of ordinary gentleness when passing said point? No. Fifth question: Were there any railings or guards placed on said bridge when it was built, or at any time thereafter, and prior to the time of plaintiff's injury? Answer by the court, by consent of counsel, No. Sixth question: Did the absence of guards or railings at the time of the injury render the bridge unsafe, and dangerous for public travel thereon by means of vehicles drawn by horses? Answer. No. Seventh question: At the time of the plaintiff's injury, did the condition and appearance of said hole, with said sticks therein, render the highway at the place unsafe, and dangerous for public travel thereon by means of vehicles drawn by horses? Answer. No. Eighth question: Was the horse which drew the buggy in which the plaintiff was riding at the time of the injury an ordinarily gentle and reliable horse for driving on public highways? Answer. Yes. Ninth question: Did the condition and appearance of said hole, with the sticks therein, frighten the horse, and cause him to shy toward the west, and thereby to run the hind wheel of the buggy off from the west end of the bridge? Answer. Yes. (a) As to the frightening of the

horse, we answer, Yes. (b) As to the shying toward the west we answer, No. (c) As to thereby causing the wheel to run off from the bridge we answer, No. Tenth question: If said hole, with said sticks therein, had not been in the highway, at the time of plaintiff's injury, would it have occurred? Answer. We don't know. Eleventh question: If the bridge had been provided with guards or railings at the time of plaintiff's injury, would it have occurred? Answer. No. Twelfth question: For how long before the injury occurred had said hole existed in the highway in substantially the same condition in which it was just before said overseer placed the sticks in it? Answer. One week. Thirteenth question: In the exercise of ordinary care and diligence should the proper officers of the town have known of the existence of said hole, and have made such repairs there as to have made the highway reasonably safe for travel thereon at that point, before the plaintiff was injured, if it was not then repaired so to be reasonably safe? Answer. Yes. Fourteenth question: In the exercise of ordinary care and diligence should the proper officers of the town have caused guards or railings to have been placed on said bridge before plaintiff was injured? Answer. No. Fifteenth question: At the time and place of the injury, did plaintiff's son drive and handle the horse with reasonable and ordinary care and skill? Answer. Yes. Sixteenth question: When the horse shied, if he did so, was he only momentarily beyond the control of the driver, or was the horse then more than momentarily beyond such control? Answer. Only momentarily. Seventeenth question: Did any want of ordinary care or skill on the part of the driver of the horse contribute to produce the injury which plaintiff sustained? Answer. No. Eighteenth question: Did any want of ordinary care on the part of the plaintiff contribute to produce the injury which said plaintiff sustained? Answer. No. Nineteenth question: Were the absence of railings or guards for the bridge, and the condition and appearance of said hole with the sticks therein, considered together, the proximate cause of the plaintiff's injury? Answer. No. Twentieth question: Was the highway, at the time and place of the injury, reasonably safe for persons traveling thereon with horses and vehicles, and in the exercise

of ordinary care? Answer. Yes. Twenty-first question: If the court shall be of the opinion that plaintiff is entitled to judgment, at what sum do you assess the damages which will be a reasonable compensation to her for the injuries she sustained? Answer. $200.00."

The defendant moved for judgment upon the verdict, and the plaintiff moved to strike out certain answers therein, and insert other answers specified in the motion; also for judgment upon the verdict, whether amended or not; also to set aside the verdict and for a new trial. The motions were heard and considered together, and the court denied defendant's motion for judgment; also the plaintiff's motion to amend the verdict and for judgment; and entered an order "that the special verdict is set aside for inconsistency and evasiveness, and a new trial granted; the costs of the first trial to abide the events of the action." From this order the defendant appeals.

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

For the respondent there was a brief by *Frank Kwapil,* attorney, and *M. T. Parker* and *Nash & Nash,* of counsel, and oral argument by *Mr. L. J. Nash* and *Mr. Parker.*

WINSLOW, J. The order setting aside the verdict and granting a new trial in this case was not an order made in the exercise of that general discretion which the trial court has on the subject. It was an order based solely on the legal conclusion that the special verdict was inconsistent and evasive. If this was a mistaken conclusion, then the order should be reversed. It cannot be sustained on the ground that it was an exercise of the court's discretion, because that ground is negatived by the terms of the order itself. *Mullen v. Reinig,* 68 Wis. 408, 32 N. W. 293. The simple question presented by the appeal, therefore, is whether the verdict is in fact inconsistent and evasive. While the question as to the form of the

verdict is not necessarily involved, it seems proper to say that the verdict in the present case is entirely too long and complicated for so simple a case. It amounts to a cross-examination of the jury, and covers questions simply evidentiary in their character. The facts in the case were mostly undisputed, and the issues necessary to be submitted to the jury were few. Without intending to dictate the form of the questions which should have been submitted, it may be said that the material issues were substantially as follows: (1) Was the highway defective by reason of the placing of the sticks in the hole by the overseer of highways; or, in other words, was the appearance of the sticks such that horses of ordinary gentleness would naturally and probably be frightened thereby? (2) Was the plaintiff's horse an ordinarily gentle horse for highway driving? (3) Was the horse frightened by the sticks, and did the plaintiff's injuries result from such fright? (4) Did the driver of the horse exercise ordinary care in his driving? (5) If not, did his want of ordinary care contribute to the happening of the accident? And (6) what is the amount of the plaintiff's damages? A comparison of the questions suggested with the questions actually submitted to the jury will demonstrate the unnecessary length of the verdict. Passing, however, to the question whether the verdict as rendered is in fact inconsistent or evasive, we find ourselves unable to agree with the conclusion of the trial court. The essential facts found by the jury are that the highway was not defective; that the horse was ordinarily gentle; that it was, however, frightened by the sticks; and that the driver was not guilty of any contributory negligence. To these facts must be added the undisputed fact that the accident actually happened. Are these facts in any way necessarily inconsistent, or are the answers of the jury evasive? The trial judge filed an opinion when he decided the various motions, from which it appears that he deemed the verdict inconsistent because it acquitted both the town and the driver of negli-

gence. In this opinion, while conceding that the inference of pure accident or misfortune might, perhaps, be drawn from the verdict, he seems to conclude that, because neither party urged that theory, but the plaintiff urged negligence of the town as the cause, and the defendant urged the negligence of the driver as the cause, therefore a verdict finding that neither of these causes existed is inconsistent, and cannot stand. This certainly does not follow. If the jury, by their answers, have found upon sufficient testimony that the occurrence was a pure accident, without negligence on either side, the defendant is entitled to the benefit of that conclusion. The negativing of negligence on one side does not, in such a case as this, necessarily involve the conclusion that there was negligence on the other side. Accidents for which no one can be held responsible frequently happen. Horses of ordinary gentleness, properly driven, frequently shy, and do damage, for no perceptible or sufficient cause.

The trial judge seems also to have considered that the answer to question No. 13 of the verdict is inconsistent with the other answers of the verdict which find that the highway was reasonably safe for the use of travelers. This conclusion also seems untenable. Question 13 is a hypothetical question purely. By it the jury were asked whether the town officers should have known of the existence of the hole, and repaired it, so as to make the road safe, before the plaintiff's injury, *if it was not then repaired so as to be safe.* By answering this question in the affirmative, the jury simply found that, upon the supposition that the road was not safe when plaintiff was injured, then it should have been repaired. They cannot be held to have found by this that the fact which was only supposed for the purpose of the question really existed. Logically, they should not have answered this question at all, because they had found as a fact that the road was safe, and they should have been instructed not to answer it if they found as a fact that the road was safe.

In our judgment, the verdict tells a plain and consistent story of a pure accident, for which no one is liable, and the motion for judgment on the part of the defendant should have been granted.

*By the Court.*—Order reversed, and action remanded, with directions to enter judgment on the verdict for the defendant.